### KERN ISLAND CANAL CO. v. RAILROAD COMMISSION OF CALIFORNIA et al.
#### and six other cases.
#### Nos. 3687–3693.

District Court, N. D. California, S. D.

Nov. 13, 1935.

McCutcheon, Olney, Mannon & Greene, of San Francisco, Cal., for plaintiffs.

Arthur T. George, Ira H. Rowell, and Roderick B. Cassidy, all of San Francisco, Cal., for defendant.

Athearn, Chandler & Farmer and Frank R. Devlin, of San Francisco, Cal., for intervener.

Before WILBUR, Circuit Judge, and ST. SURE and LOUDERBACK, District Judges.

LOUDERBACK, District Judge.

The above seven actions, arising out of an ad interim order of the Railroad Commission of the state of California, were consolidated for this hearing. The plaintiffs are public utility service corporations furnishing and selling water for irrigation purposes. The defendants in each case are the Railroad Commission of the state of California and the individual members of the Railroad Commission of the state of California. The plaintiffs seek to enjoin as confiscatory, under the Fourteenth Amendment to the Constitution of the United States, the enforcement of a water rate promulgated by the Railroad Commission, and request an injunction against interference with

plaintiffs charging rates estimated by plaintiffs to be sufficient to produce their operating expenses and a fair return on the values of their operative properties until the establishment of lawful rates by the commission. Practically all of the stock of the plaintiff companies is held by the Kern County Land Company, and the pleadings show that the commission determined a uniform rate for all the plaintiff companies, instead of fixing rates for each company upon its respective property values. The commission alleged that it was not attempting to follow the accepted formulas for the estimation of just and reasonable rates, as the usual methods were not applicable in this instance. The commission thereupon devised a formula for the adjustment of rates from year to year, the adjustment depending upon prices prevailing for the agricultural commodities produced in the territory served by the several canal companies. The minimum rate under such formula was fixed at 85 cents per acre foot of water delivered. The answers filed by the commission admit that the application of such rate-making formula during the year 1934 would have resulted in a return of 85 cents per acre foot of water delivered by each of the canal companies. The commission admits further, in its written argument on file, that such formula applied to the year 1935 would result in a rate of 85 cents per acre foot. The commission further conceded in such written argument that the rate of 85 cents per acre foot is only sufficient to meet the actual expenses of operation incurred by the canal companies as a whole. This is also admitted in the answer of the commission. The answer further states: "And in order to meet such expenses and in addition to return to plaintiff a return of 6% upon the value of its properties, the total amount which it must charge and collect for water delivered does not exceed $1.35 per acre foot."

The Railroad Commission sets forth a chart in its written argument, which contains the figures they claim are involved in this litigation. This chart will be set forth in this opinion. It is to be noted that they list what they consider a "reasonable" rate, and a "rate needed for 6% return on historical cost." In each instance the rate is higher than the rate determined for 1934 and 1935, namely 85 cents per acre foot. The "reasonable" rate is set forth in column 10 of the chart, while the "rate needed for 6% return on historical cost" is set forth in column 11. The "reasonable" rates in column 10 were arrived at by the commission upon their determination that the plaintiffs were not entitled to the 6 per cent. return rates in column 11, because the water supply is not 100 per cent. sufficient all of the time, and, therefore, "many of its consumers are compelled at great expense to pump water from wells for the purpose of supplementing the water supply of plaintiff."

| Canal Co. | 1 Value Alleged | 2 Value Admitted (Hist. Cost) | 3 Average Delivery of Water Alleged Ac. Ft. | 4 Average Delivery of Water Admitted Ac. Ft. | 5 Average Expenses Alleged | 6 Average Expenses Admitted | 7 Alleged Rate For Expenses | 8 Alleged Total Rate for 3% Return | 9 Rate Needed for Admitted Expenses | 10 Rate Admitted Reasonable | 11 Rate Needed for 6% Return on Hist. Cost |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Kern Island | $1,210,000 | $ 552,000 | 70,000 | 70,000 | 65,000 | 60,000 | .93 | 2.31 | .37 | $1.35 | $1.35 |
| East Side | 158,000 | 150,000 | 15,800 | 16,000 | 18,000 | 17,000 | 1.17 | 1.97 | 1.06 | 1.35 | 1.62 |
| Kern River | 368,000 | 250,000 | 25,000 | 25,000 | 19,000 | 19,000 | .76 | 1.94 | .76 | 1.00 | 1.36 |
| Stine, Farmers | 285,000 | 148,000 | 20,000 | 20,000 | 26,000 | 20,000 | 1.30 | 2.44 | 1.00 | 1.20 | 1.44 |
| Buena Vista | 153,000 | 61,000 | 15,000 | 15,000 | 12,000 | 12,000 | .80 | 1.62 | .80 | 1.00 | 1.04 |
| Central | 1,670,000 | 1,150,000 | 70,000 | 70,000 | 72,000 | 50,000 | 1.03 | 2.50 | .71 | 1.00 | 1.69 |
| Pioneer | 290,000 | 132,000 | 11,000 | 11,000 | 10,000 | 9,000 | .91 | 2.50 | .88 | 1.00 | 1.60 |
| Total— All Canals | $4,134,000 | $2,433,000 | 226,800 | 227,000 | 222,000 | 187,000 | .98 | | .83 | 1.15 | |

The motion for an interlocutory injunction was granted by the court, and rates allowed during the period of temporary injunction, on the basis of the

rates set forth in column 10 as "reasonable rates." There has been submitted to the court the motion of the intervener, W. M. Troll, for judgment on the pleadings. The motion for judgment on the pleadings has been adopted by the plaintiffs and defendants.

▮ The question now before the court is whether or not the commission's order establishing such a plan or formula for fixing of rates is valid, or whether or not the rates so fixed are confiscatory, and therefore a violation of the provisions of the Fourteenth Amendment of the Constitution of the United States.

As stated in United Railways & Electric Co. v. West et al., 280 U.S. 234, 50 S.Ct. 123, 125, 74 L.Ed. 390: "The fundamental principle to be observed is that the property of a public utility, although devoted to the public service and impressed with a public interest, is still private property, and neither the corpus of that property nor the use thereof constitutionally can be taken for a compulsory price which falls below the measure of just compensation. One is confiscation no less then the other."

It is admitted here that the method of fixing rates was not based upon an attempt to fix a compensatory rate based upon a value of the properties of the plaintiff as determined by the commission. The formula or plan for future rates is set forth in the bill of complaint as follows, and was concededly based upon the ability of consumers or patrons of the plaintiffs to pay for the water needed.

"Formula or plan for future. rates:

"The following principles should control:

"1. The annual rate to be charged should, in general, vary in accordance with the variation of the prices of the principal crops produced, which are wheat, barley, alfalfa, and cotton, aggregating 86 per cent of the irrigated acreage.

"2. The minimum rate to be charged should be such as to produce, on the average, operating expenses. This minimum rate should be eighty-five cents (85¢) per acre foot of water delivered.

"3. Rates should be filed annually by the utilities based upon a definite formula with opportunity by the consumers to have a summary review by the Commission of the application of the formula.

"4. The rate to be charged during each irrigating year should be based upon the average of the monthly prices received by producers for wheat, barley, alfalfa and cotton in the State of California for the immediately preceding calendar year, which should be those prices determined and published monthly by the United States Department of Agriculture in its publication entitled 'Crops and Markets.' "

The flat or base rate of 85 cents per acre foot of water delivered was fixed as to all plaintiffs, although it was admitted that plaintiffs are separate and distinct corporations, owning separate and distinct irrigation systems, serving separate and distinct service areas, with materially different operating costs. Further, defendants admitted that the rates fixed did not measure up to compensatory rates based on the value of the properties as ascertained by them.

It is well established that a utility cannot be compelled to furnish service at less than compensatory rates, and that an order purporting to compel it to do so is invalid as a violation of the Fourteenth Amendment to the Constitution of the United States. Los Angeles Gas & Electric Corporation v. Railroad Commission, 289 U.S. 287, 53 S.Ct. 637, 77 L. Ed. 1180; McCardle v. Indianapolis Water Co., 272 U.S. 400, 47 S.Ct. 144, 71 L.Ed. 316; Bluefield Water Works & Improvement Co. v. Public Service Commission, 262 U.S. 679, 43 S.Ct. 675, 67 L.Ed. 1176.

▮ This court is not a rate-making body, and is not empowered to either fix rates, or to direct that rates be fixed, as urged by the plaintiffs. Rowley v. Chicago & N. W. R. Co., 293 U.S. 102, 55 S.Ct. 55, 79 L.Ed. 222.

▮ Plaintiffs' counsel, during the presentation of the issues, contended that under the terms of the Public Utilities Act (St. 1915, p. 115, as amended), if the court only restrained the commission from enforcing the rates set forth in plaintiffs' petition as confiscatory, that the complainants would find themselves in the position where they would have to deliver water at a rate less than the one the court would hold confiscatory. That this is so, since the Public Utilities Act of California would force them to charge

rates no greater than those in effect at the time they came under the operation of the Utilities Act, until a determination of a rate by the commission. That such latter rates are lower than the rates determined by the commission and which the complainants seek to enjoin as confiscatory.

It is only necessary to say that no statute or rate-making body can enforce confiscatory rates.

The writ of injunction may issue to enjoin the enforcement of the rate set forth in the said decision of the Railroad Commission.